## HASTINGS v. HEROLD.

(Circuit Court, D. New Jersey. July 11, 1910.)

1. INTERNAL REVENUE (§ 38*)—OLEOMARGARINE TAXES—ACTION TO RECOVER.

Where, in an action to recover oleomargarine taxes paid under protest into the hands of a deputy collector of internal revenue and by him deposited to the credit of the treasurer of the United States, the summons was issued against the collector individually, but the demand claimed was for moneys paid into his office as collector of internal revenue, and a petition for removal of the cause to the federal court alleged that defendant, acting as internal revenue collector under and by authority of the acts of Congress relating to the manufacture and sale of oleomargarine, collected the moneys in question, and the case was tried on the theory that the moneys were received by defendant as such, and it was admitted at the trial that defendant made the assessment and sent it to his deputy for collection, the summons would be considered as amended, so that it would be directed to defendant in his official capacity, or otherwise, as might be necessary.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 38.*]

2. INTERNAL REVENUE (§ 38*)—TAXES ILLEGALLY ASSESSED—RECOVERY.

No suit lay at common law on an implied assumpsit to recover taxes illegally paid, and hence an action to recover such taxes could only be maintained under and in strict pursuance of the statutes authorizing the same.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 38.*]

3. INTERNAL REVENUE (§ 38*)—TAXES ILLEGALLY ASSESSED AND COLLECTED—RECOVERY—OLEOMARGARINE ACT.

Rev. St. §§ 3221, 3226 (U. S. Comp. St. 1901, pp. 2087, 2088), relating to the return of internal revenue taxes illegally assessed, and providing that no suit shall be maintained in any court for the recovery of an internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty or sum claimed to have been wrongfully collected until an appeal shall have been duly made to the Commissioner of Internal Revenue, provided that, if the decision is delayed more than six months from the date of the appeal, suit may be brought without first having the commissioner's decision, apply to special taxes assessed and collected under the laws regulating the manufacture and sale of oleomargarine.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 38.*]

4. EVIDENCE (§ 47*)—JUDICIAL NOTICE—INTERNAL REVENUE REGULATIONS—FORMS.

Regulations of the Secretary of the Treasury adopting different forms for use on applications to his office for the abatement of an assessment of internal revenue taxes and for the return of moneys alleged to have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

been wrongfully collected as such have the force of law and will be judicially noticed by the federal courts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 69; Dec. Dig. § 47.*]

5. INTERNAL REVENUE (§ 38*)—OLEOMARGARINE TAXES—WRONGFUL ASSESSMENT—RECOVERY.

Rev. St. § 3226 (U. S. Comp. St. 1901, p. 2088), provides that no suits shall be maintained in any court to recover an internal tax alleged to have been erroneously or illegally assessed or collected, or any penalty, until appeal has been duly made to the Commissioner of Internal Revenue according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury and a decision of the commissioner has been had therein. Held, that where a person alleged to have been wrongfully assessed for oleomargarine taxes applied pursuant to internal revenue form 47 for an abatement of the assessment, which application was denied, but made no application pursuant to form 46 for a return of the moneys alleged to have been paid as such taxes under a protest, a suit brought against the collector to recover such taxes was premature.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 38.*]

Action by Henry Hensch, continued in the name of Frank Hastings, trustee in bankruptcy of Hensch, against Herman C. H. Herold, as collector of internal revenue at Jersey City, to recover special oleomargarine taxes assessed against Hensch and paid under protest. Complaint dismissed.

Merritt Lane, for plaintiff.

Harrison P. Lindabury, Asst. U. S. Dist. Atty., for defendant.

CROSS, District Judge. This suit was tried before the court without a jury; a jury having been waived pursuant to the statute. It was originally commenced in the First district court of the city of Newark, in the name of Henry Hensch, as plaintiff; but, as he was subsequently adjudged a bankrupt, his trustee was, by order of this court, substituted as plaintiff. The action was removed by certiorari from the city court to this court. The state of demand filed in that court sought to recover of the defendant the sum of $338.68, with interest from August 21, 1907, money paid to him as collector of internal revenue, by Hensch, in part as a special tax on the business of manufacturer of oleomargarine, alleged to have been carried on by Hensch at Jersey City, in this state, and for a penalty of 50 per cent. assessed under authority supposed to have been conferred by section 3176 of the Revised Statute (page 2068, U. S. Comp. St. 1901), upon the said special tax, and in part for a special stamp tax upon certain oleomargarine and for other penalties therein mentioned, growing out of the same transaction.

The allegations of the state of demand, except those pertaining to the payment of the tax and penalties under duress and to the illegality of the assessment, were admitted at the trial. It appears by the evidence and admissions of counsel that Hensch was indicted in this district for having manufactured oleomargarine without having paid the special tax therefor required by law to be paid by a manufacturer thereof, and after trial on such accusation was acquitted. The record in that case was offered in evidence, and it was admitted

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the offense therein charged, and of which he was acquitted, was the same as that for which he was compelled to pay the taxes and penalties above referred to. Hensch also testified in this case that, at the time charged, he was not a manufacturer of oleomargarine, and his testimony in that respect is uncontradicted. It also appears by his evidence that the sums above mentioned were paid by him only after threat by the collector of internal revenue of seizure and· sale of his property, and that at the time when the payment was actually made it was made under protest. Later, and on or about March 3, 1908, he filed a verified application with the Commissioner of Internal Revenue, asking, for reasons therein given, that the assessment of said taxes and penalties should be abated, stating, among other things, that he was justly entitled, and that he asked and demanded, to have said sum of $519.50 remitted, together with the penalties and interest amounting to $19.18, which application was not granted. The tax and penalties were admittedly paid to the deputy collector at Jersey City, and by him deposited to the credit of the Treasurer of the United States.

The point is now raised by the defendant that, as this suit was commenced against the defendant individually, and as the moneys never came into his hands, but into the hands of his deputy at Jersey City, and were deposited by him as above stated, the verdict herein must be in favor of the defendant. It is true that the summons was issued against the defendant individually; but the state of demand claims the moneys of him as collector of internal revenue for the Fifth district of the state of New Jersey. Moreover, his petition for the removal of the cause into this court sets forth that the defendant, acting as internal revenue collector of the United States, under and by authority of the acts of Congress, relating to the manufacture and sale of oleomargarine, and the supplements thereto and amendments thereof, collected the moneys now in question. Again, the case was tried throughout upon the theory that the moneys were collected by the defendant as collector of internal revenue, and it was admitted at the trial that the assessment made by the Commissioner of Internal Revenue was sent to the defendant and by him sent to his deputy at Jersey City, for collection. Under the circumstances, therefore, the summons ought to, and may properly, be considered as amended, so that it will be directed to the defendant as collector of internal revenue or otherwise, as may be necessary.

It is further urged on behalf of the defendant that the plaintiff cannot recover in this case because Hensch has not complied with the regulations prescribed by the Secretary of the Treasury under authority of section 3226, Rev. St. (U. S. Comp. St. 1901, p. 2088), in that his affidavit by way of petition to the Commissioner of Internal Revenue merely asked for an abatement and remission of the assessment, and that no petition was filed by him to have the tax and penalties refunded. The plaintiff, however, contends, under the authority of Tucker v. Grier, 160 Fed. 611, 87 C. C. A. 513, that sections 3221 and 3226 of the Revised Statutes (pages 2087, and 2088, U. S. Comp. St. 1901), do not apply to a return of taxes illegally assessed under the oleomargarine act. In that case it was said that because by sec-

·tion 3; of that act (Act Aug. 2, 1886, c. 840, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2229]) sections 3232 to 3241, inclusive, and section 3243 of the Revised Statutes (pages 2091–2095, U. S. Comp. St. 1901), were expressly referred to, and made a part of the act, other sections of the law relating to internal revenue, including section 3226, were not applicable. . Notwithstanding the great respect which I must and do entertain for the opinion of that court, I am constrained, contrary to my first impression, to differ from its conclusion. The foregoing sections of the Revised Statutes relating to internal revenue were by the language of the third section of the oleomargarine act, "so far as applicable, made to extend to, and include and apply to the special taxes imposed by this section and to the persons upon whom they are imposed." The conclusion is reached in the case above cited that, because the foregoing sections are specifically incorporated into the oleomargarine act, others not thus mentioned are by implication excluded. Section 3226 of the Revised Statutes is as follows:

"No suit shall be maintained in any court for the recovery of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the commissioner has been had therein: provided, that if such decision is delayed more than six months from the date of such appeal, then the said suit may be brought, without first having a decision of the commissioner at any time within the period limited in the next section."

It will be noticed that this language is of the most comprehensive character—no suit shall be maintained in any court for the recovery of any internal revenue tax, etc. No suit would lie at common law upon an implied assumpsit to recover taxes illegally paid. Collector v. Hubbard, 79 U. S. 1, 20 L. Ed. 272. The plaintiff must follow the statutory method if he would prevail. An appeal to the Commissioner of Internal Revenue is a condition precedent to an action for the recovery of taxes paid. Erskine, Collector, v. Holnbach, 14 Wall. 613, 20 L. Ed. 745; Cheatham v. U. S., 92 U. S. 85, 23 L. Ed. 561. His only right to recover rests upon sections 3220 and 3226. Since that is so, he must comply with their terms, including any regulations made by the Secretary of the Treasury, pursuant to the power thereby conferred. The sections of the internal revenue law, incorporated into the oleomargarine act, relate simply and solely to the imposition of the special taxes therein referred to, and the persons upon whom they were to be imposed. The procedure requisite under sections 3220 and 3226, for the return of taxes and penalties, was independent subject-matter, and their applicability to the oleomargarine act was in no wise impaired or modified, in my judgment, by the fact that they were not specifically referred to, although other sections were. There is nothing in that act repugnant to sections 3220 and 3226. No method for the return or for a suit for the recovery of taxes and penalties illegally imposed is provided or even referred to in that act. Section 3226 was intended to, and does, in specific terms, apply to all cases like the one at bar, and is of such a comprehensive character that its

provisions cannot be disregarded in any case coming within its purview, until Congress shall have otherwise expressly provided.

In Nichols v. United States, 7 Wall. 122, 129 (19 L. Ed. 125), the importance of the matter under consideration is discussed, and so clearly that a somewhat lengthy extract is both permissible and instructive:

"The prompt collection of the revenue, and its faithful application, is one of the most vital duties of government. Depending as the government does on its revenue to meet, not only its current expenses, but to pay the interest on its debt, it is of the utmost importance that it should be collected with dispatch, and that the officers of the treasury should be able to make a reliable estimate of means, in order to meet liabilities. It would be difficult to do this, if the receipts from duties and internal taxes paid into the treasury were liable to be taken out of it, on suits prosecuted in the Court of Claims for alleged errors and mistakes, concerning which the officers charged with the collection and disbursement of the revenue had received no information. Such a policy would be disastrous to the finances of the country, for, as there is no statute of limitations to bar these suits, it would be impossible to tell, in advance, how much money would be required to pay the judgments obtained on them, and the result would be that the treasury estimates for any current year would be unreliable. To guard against such consequences, Congress has from time to time passed laws on the subject of the revenue, which not only provide for the manner of its collection, but also point out a way in which errors can be corrected. These laws constitute a system which Congress has provided for the benefit of those persons who complain of illegal assessments of taxes and illegal exactions of duties. In the administration of the tariff laws, as we have seen, the Secretary of the Treasury decides what is due on a specific importation of goods; but, if the importer is dissatisfied with this decision, he can contest the question in a suit against the collector, if, before he pays the duties, he tells the officers of the law, in writing, why he objects to their payment.

"And an equal provision has been made to correct errors in the administration of the internal revenue laws. The party aggrieved can test the question of the illegality of an assessment, or collection of taxes, by suit; but he cannot do this until he has taken an appeal to the Commissioner of Internal Revenue. If the commissioner delays his decision beyond the period of 6 months from the time the appeal is taken, then suit may be brought at any time within 12 months from the date of the appeal. Thus it will be seen that the person who believes he has suffered wrong at the hands of the assessor or collector can appeal to the courts; but he cannot do this until he has taken an intermediate appeal to the commissioner, and, at all events, he is barred from bringing a suit, unless he does it within a year from the time the commissioner is notified of his appeal. The object of these different provisions is apparent. While the government is desirous to secure the citizen a mode of redress against erroneous assessments or collections, it says to him: 'We want all controverted questions concerning the revenue settled speedily, and, if you have complaint to make, you must let the Commissioner of Internal Revenue know the grounds of it; but if he decides against you, or fails to decide at all, you can test the question in the courts if you bring your suit within a limited period of time.'"

I do not concede, and am unwilling to hold, that a "system" thus devised by Congress, declaring when and how moneys can be recovered from the United States treasury, can be properly held inapplicable to a revenue act of any kind subsequently passed for the reasons given in Tucker v. Grier, supra. The sections of the internal revenue act, constituting the "system" referred to in Nichols v. United States, supra, unless expressly excluded, in my judgment, become a part of every internal revenue act. They constitute the general law of the subject, and, since there is nothing in the oleomargarine act repugnant

to their provisions, control this case. As already stated, however, the plaintiff herein sought to comply with the terms of section 3226, and made an appeal to the Commissioner of Internal Revenue for the abatement of the assessment, but not for the return of the moneys in question. The Secretary of the Treasury has provided two forms, Nos. 46 and 47, for the purposes just mentioned. 46 is made applicable to the return of taxes and penalties illegally or improperly assessed, and 47 for an abatement of their assessment. Form 46 is applicable to cases where the taxes and penalties have been paid, and 47 to cases where they have not been paid. These regulations of the Secretary have the force of law, and the federal courts are obliged to take notice of them. Caha v. United States, 152 U. S. 211, 221, 14 Sup. Ct. 513, 38 L. Ed. 415. Furthermore, they are obviously binding upon the commissioner, and he obtains jurisdiction to pass upon a claim only when and as they have been complied with. The merits of a case come before him when a proper claim has been made. He never passed upon the merits of the plaintiff's claim as herein presented. Under the appeal presented and acted upon by him, he could only determine whether or not the assessment should be abated. Any other or further action would have been in violation of the regulations and beyond his jurisdiction. In United States v. Savings Bank, 104 U. S. 728, 26 L. Ed. 908, form 46 was recognized as appropriate where a return of taxes was sought. In Hicks v. James' Administratrix (C. C.) 48 Fed. 542, the plaintiff brought suit to recover certain taxes which it was claimed had been illegally exacted, and the question as to whether there had been a proper appeal made to the commissioner, before the suit was instituted, was raised, and the difference between an appeal taken under forms 46 and 47 clearly shown. The case was later affirmed by the Supreme Court sub nom. James' Administratrix v. Hicks, 110 U. S. 272, 4 Sup. Ct. 6, 28 L. Ed. 144.

But, if the use of form 47 by the plaintiff were permissible, the appeal was imperfect in not having indorsed thereon the affidavit and certificate required by the regulations.

The suit was prematurely brought; judgment will be entered accordingly. If a review is desired, counsel can doubtless agree upon the case; if not, they may come before me on notice to settle it.